**ZIMMERMAN REED LLP**
Caleb L. Marker (CA Bar No. 269721)
Ryan J. Ellersick (CA Bar No. 357560)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
caleb.marker@zimmreed.com
ryan.ellersick@zimmreed.com

**JANOVE PLLC**
Raphael Janove (CA Bar No. 361193)
500 7th Ave., 8th Fl.
New York, NY 10018
Tel: (646) 347-3940
raphael@janove.law

*Attorneys for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| **Kim Tran and Lidia Wu,** on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **Daesang Holdings California, Inc.,** <br><br> Defendant. | Case No.   2:25-CV-08745 <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. <br> 2. Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq. <br> 3. Violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code. § 1750 et seq. <br> 4. Violation of the New York General Business Law § 349. <br> 5. Violation of the New York General Business Law § 350. <br><br> **JURY TRIAL DEMANDED** |

1

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (*see* ¶¶ 11-12, *infra*.). It also has personal jurisdiction over Defendant because California is the jurisdiction where Defendant maintains its principal place of business and conducts substantial business and is where a substantial part of the acts and omissions that Plaintiffs complain of occurred.

Plaintiffs Kim Tran and Lidia Wu, on behalf of themselves and others similarly situated, on knowledge as to their own actions, the investigation of Plaintiffs' counsel, and otherwise upon information and belief, allege against Defendant Daesang Holdings California, Inc. ("Defendant") as follows:

**PRELIMINARY STATEMENT**

1. This is a class action lawsuit against Defendant, which sells various types of kimchi, a traditional Korean dish made out of fermented cabbage, throughout the United States. Defendant sells its kimchi under the "Jongga" brand.[1]

2. Defendant produces kimchi in the United States and Republic of Korea and distributes it across the United States.

3. At issue in this case is Defendant's sliced napa cabbage mat kimchi ("Cabbage Kimchi") and Defendant's cucumber kimchi ("Cucumber Kimchi"), (together, "Costco Kimchis") which Defendant imports from Korea and sells exclusively in Costco.[2]

4. The Costo Kimchis prominently display, on their front labels, the assertion that they are "Naturally Fermented."

5. Defendant's website does not list the Costco Kimchis' ingredients. It even claims that the Costco Kimchis "deliver[] the true, authentic flavor of traditional Korean kimchi" and are "healthy and delicious addition[s] to any meal!"

6. As such, a reasonable consumer reading the label would understand

---

[1] https://jonggausa.com/pages/about-us

[2] https://jonggausa.com/collections/refrigerated-kimchi/products/sliced-napa-cabbage-mat-kimchi-1-5kg

that "Naturally Fermented" kimchi would contain natural ingredients and that the kimchi would be prepared traditionally.

7.    However, Defendant's Costco Kimchis are not "Naturally Fermented." Rather, they contain sorbitol, a highly processed, added ingredient that is buried in the ingredients list on the back labels of the products.

8.    Sorbitol is not natural, and by including it in their products, Defendant makes their Costco Kimchis "ultra-processed" foods, according to the NOVA food classification system.

9.    Defendant's false and misleading statements caused Plaintiffs and members of the proposed classes to pay a price premium for the Costco Kimchis. Had they known the truth, Plaintiffs and members of the proposed classes would not have purchased the Costco Kimchis or would have paid significantly less.

10.    Plaintiffs seek monetary and injunctive relief against Defendant for violating the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.;* California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; and New York General Business Law ("GBL") §§ 349–50.

## JURISDICTION

11.    This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant.

12.    This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in City of Industry, California. Defendant conducts substantial business in this District, and a substantial part of the acts and omissions that Plaintiffs complain of occurred in this District.

**VENUE**

13.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

14.     In addition, venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District and is subject to this Court's personal jurisdiction.

**PARTIES**

15.     Plaintiff Kim Tran is an individual who resides in California and has purchased Defendant's Costco Kimchis on multiple occasions. Drawn in specifically by the label of "Naturally Fermented," Plaintiff Tran bought Defendant's Cabbage Kimchi and Defendant's Cucumber Kimchi at Costco because she thought they would improve her gut health. Plaintiff Tran reasonably relied on Defendant's false advertisements and misleading information and would not have purchased the items or would have paid less for the items had she known about Defendant's deceptive practices.

16.     Plaintiff Lidia Wu is an individual who resides in New York and has purchased Defendant's Cabbage Kimchi on multiple occasions. Plaintiff Wu is a chef who has made her own kimchi from scratch in an effort to add healthy, clean, fermented vegetables to her family's diet. When shopping at Costco, she saw Defendant's "Naturally Fermented" Cabbage Kimchi and decided to purchase it in order to save time while maintaining her goal of integrating kimchi into her family's diet. Plaintiff reasonably relied on Defendant's false advertisements and misleading information and would not have purchased the item or would have paid less for the item had she known about Defendant's deceptive practices.

17.     Defendant Daesang Holdings California, Inc. is a California corporation that is headquartered in City of Industry, California, and is responsible for the false advertising and misleading statements that Plaintiffs reasonably relied on when they purchased the Costco Kimchis.

1

2

**FACTS**

**A.    A Brief History of Kimchi**

3

4

5

6

18.    Kimchi is a food made primarily from Chinese cabbage (or subtype napa cabbage), although other vegetables can be used. These vegetables are seasoned with ingredients such as red pepper powder, garlic, and ginger and then fermented at low temperatures by lactic acid bacteria.[3]

7

8

9

19.    Kimchi has been a central part of the Korean diet for thousands of years. It was first created as a way to preserve vegetables through the cold and desolate winter.[4]

10

11

12

13

20.    In Korea, the history of this dish is honored annually at an event called "kimjang," where large groups of people gather to prepare mass amounts of kimchi to consume during the winter months, highlighting the importance that kimchi still holds in Korean culture and society.[5]

14

**B.    Consumers Value Healthy Fermented Foods**

15

16

17

18

21.    Kimchi is often considered a superfood because it is low in calories while being packed with vitamins, minerals, fibers, and healthy bacteria.[6] Preliminary studies also show kimchi's potential to help prevent cancer by slowing the growth of leukemia cells in the human body.[7]

19

20

22.    Kimchi's health benefits have led to increased demand for the product in the United States.

21

22

23.    American's interest in fermented foods such as kimchi became especially prevalent during the COVID-19 pandemic, with kimchi sales rising 952

23

24

25

26

27

28

---

[3] https://journalofethnicfoods.biomedcentral.com/articles/10.1186/s42779-023-00171-w

[4] *Id.*

[5] *Id.*

[6] https://journalofethnicfoods.biomedcentral.com/articles/10.1186/s42779-023-00173-8

[7] https://pmc.ncbi.nlm.nih.gov/articles/PMC4285955/#sec2

CLASS ACTION COMPLAINT

percent in February of 2020.[8] Experts believe this was because fermented foods such as kimchi are associated with gut health and other health benefits, leading consumers to think that eating these foods would help protect against the virus, even if this association was not proven.[9]

24.     Today, American's interest in fermented kimchi continues to grow.

25.     In the first six months of 2024, the U.S. imported 6,647 tons of kimchi from Korea—a 21.5 percent increase from the first half of 2023.[10]

26.     This continued growth in American kimchi sales is driven by consumer demand for fermented and probiotic-rich foods.[11] High demand for these products indicates that many consumers are likely to pay a price premium for kimchi that they believe can deliver certain health benefits.

**C.     People Value Clean Food Free of Processed Additives**

27.     As of 2018, 78 percent of American adults believe that food and drinks with artificial preservatives pose some or a great deal of risk to their average health over their lifetime.[12]

28.     The most commonly avoided artificial ingredient is artificial sweeteners. Forty-four percent of Americans said that they try to limit the amount of artificial sweetener they consume.[13] This means that almost half of American consumers try to avoid sorbitol, one of seven ingredients commonly used as a low-calorie sweetener in products like soft drinks or chewing gum.[14]

29.     In 2025, 60 percent of consumers expressed concern about processed

---

[8] https://nypost.com/2020/04/17/heres-why-sauerkraut-and-kimchi-sales-are-surging-thanks-to-coronavirus/

[9] *Id.*

[10] https://www.koreaherald.com/article/3446279

[11] https://www.grandviewresearch.com/industry-analysis/kimchi-market-report

[12] https://www.pewresearch.org/science/2018/11/19/public-perspectives-on-food-risks-2/

[13] *Id.*

[14] https://www.ynhh.org/services/nutrition/sugar-alcohol

CLASS ACTION COMPLAINT

foods, and 34 percent said that whether a food is "highly processed" is a "top concern" is their purchasing decisions.[15]

30.    Additionally, in 2018, 49 percent of Americans said that genetically modified foods were worse for their health compared to non-genetically modified foods—this was an increase compared to 39 percent of Americans in 2016.[16]

31.    These trends help to explain why organic product sales grew by 5.2 percent in 2024 and why consumers would pay, on average, 30.7 percent more for healthier foods.[17]

32.    This move toward healthy, organic foods and away from highly processed foods is not just theoretical; it is large enough to be reflected in measurable consumption patterns. For years, the highly processed foods market experienced steady and reliable growth. In 2024, however, sales of highly processed foods began to slow and, in some areas, decline by as much as 7 percentage points.[18]

33.    By claiming that its Costco Kimchis are "Naturally Fermented," Defendant is capitalizing on—and exploiting—these recent increases in consumer preferences for healthy, additive-free foods. However, by adding the harmful sugar alcohol, sorbitol, to its products, Defendant is not delivering on its end of the bargain.

**D.    Defendant Falsely and Misleadingly Labels and Markets the Costco Kimchis as Being "Naturally Fermented" and "Traditional"**

34.    Defendant makes two different kinds of kimchi, one from sliced napa

---

[15] https://www.foodbusinessnews.net/articles/28677-capitalizing-on-consumer-concerns-about-processed-foods; *See also* https://fortune.com/europe/2024/11/29/ultra-processed-foods-no-recipe-waitrose/; https://ag.purdue.edu/news/2025/03/most-consumers-see-processed-foods-as-potentially-unhealthy-but-buy-them-anyway.html

[16] https://www.pewresearch.org/science/2018/11/19/public-perspectives-on-food-risks-2/

[17] https://ota.com/about-ota/press-releases/growth-us-organic-marketplace-accelerated-2024; https://pmc.ncbi.nlm.nih.gov/articles/PMC10909406/

[18] https://www.bcg.com/publications/2025/cpg-companies-need-new-recipe-consumers-seek-healthier-choices

CLASS ACTION COMPLAINT

cabbage and one from cucumber. Defendant sells both of these products at Costco Wholesale stores.

35.    On the front label, almost as obvious as the product name itself, Defendant labels both its Cabbage Kimchi and its Cucumber Kimchi as "Naturally Fermented":



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

36.    On Defendant's website, it also claims that both Costco Kimchis "deliver[] the true, authentic flavor of traditional Korean kimchi":




37.    By using the words "Naturally Fermented" and "traditional" to describe its Cabbage Kimchi and its Cucumber Kimchi, Defendant creates the false perception that both its Costco Kimchis are prepared according to classic Korean recipes based on all-natural ingredients—not modern, chemically-produced, processed ingredients.

38.    In reality, Defendant adds sorbitol to both its Cabbage Kimchi and its Cucumber Kimchi:

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



26    39.    Sorbitol is a sugar alcohol—a kind of carbohydrate—that is naturally-

27    occurring in some fruits but is commonly artificially manufactured to be used in the

28

commercial production of various foods. Sorbitol helps to "preserve moisture, add sweetness, and provide texture to products."[19]

40.    Defendant does not make it obvious that its Costco Kimchis include sorbitol.

41.    Defendant does not list the Costco Kimchis' ingredients on its website or on either of the Costco Kimchis' online product pages. As such, if a consumer is relying on Defendant's website for information, it is impossible to know that Defendant's Costco Kimchis include sorbitol.

42.    Additionally, the packaging of the Costco Kimchis does not make it clear to a reasonable consumer that they both include unnatural, processed ingredients. In fact, the packaging tries to hide this fact by making the opposite claim.

43.    On both the Cabbage Kimchi and the Cucumber Kimchi packaging, sorbitol is listed in small font on the back label while the front label says "Naturally Fermented" in large, eye-catching lettering. As such, Defendant's labeling and marketing of this product intentionally misleads consumers to believe they are purchasing a natural and cleaner, healthier product.

**E.    Defendant's Sorbitol is Artificial and Potentially Harmful**

44.    Although sorbitol can be naturally occurring, on information and belief, the sorbitol used in Defendant's Costco Kimchis are artificially manufactured, as most sorbitol used for commercial food products is.

45.    Most sorbitol produced in Korea is synthetically manufactured through the hydrogenation of glucose—the chemical process of turning glucose into sorbitol.[20]

46.    Recently, bio-based sorbitol—made from corn or wheat—has been

---

[19] https://www.healthline.com/nutrition/what-is-sorbitol

[20] https://www.linkedin.com/pulse/south-korea-bio-based-sorbitol-market-2026-size-tiyme ; https://www.sciencedirect.com/topics/agricultural-and-biological-sciences/sorbitol

increasing in popularity in Korea.[21] Despite coming from a plant base, bio-based sorbitol still uses the chemical process of hydrogenation to turn glucose into sorbitol, meaning that it is not a natural ingredient.[22]

47. As such, whether Defendant uses more traditional methods of producing sorbitol or more modern, innovative methods, it is reasonable to believe that the sorbitol used in Defendant's Costco Kimchis is not natural, nor is it part of the traditional Korean kimchi recipes that Defendant claims to emulate.

48. According to NOVA—a food classification system adopted by many countries around the world and the United Nations—a food is considered an ultra-processed food if it "contains at least one item characteristic of the ultra-processed food group."[23]

49. Because Defendant's Costco Kimchis include industrially produced sorbitol, they are considered ultra-processed foods.

50. Not only are the Costco Kimchis ultra-processed and not "Naturally Fermented," but their inclusion of artificial sorbitol can also have many negative health-related side effects, including cognitive decline and gastrointestinal issues.

51. By following the diets of 13,000 adults over eight years, a new study found that individuals who consumed the equivalent of one diet soda's worth of sorbitol—or other artificial sweeteners—every day experienced mental decline 62 percent faster than those who consumed less.[24]

52. In addition to reduced cognitive abilities, sorbitol can also cause gastrointestinal issues.

53. The body digests sugar alcohols such as sorbitol very slowly, meaning that these synthetic products have a lot of time to interact with gut bacteria and cause

---

[21] https://www.linkedin.com/pulse/south-korea-bio-based-sorbitol-market-2026-size-tiyme

[22] *Id.*

[23] *Id.*

[24] https://www.neurology.org/doi/10.1212/WNL.0000000000214023

excess gas. Slow digestion can also cause water to be pulled into the colon, causing diarrhea and loose stool.[25]

54.    Research also shows that sugar alcohols can have harmful effects on long-term health, increasing the chances of stroke and heart attack in people with conditions such as diabetes and high blood pressure.[26] Sorbitol may also cause cataracts and kidney problems, and it may cause diabetics to experience damaged blood vessels and nerves.[27]

55.    People who suffer from gastrointestinal problems such as irritable bowel syndrome (IBS) may intentionally seek out fermented foods such as kimchi, as research shows that fiber and lactic acid bacteria has been proven to help with such issues.[28]

56.    Moreover, people with IBS may also intentionally avoid sugar alcohols such as sorbitol because they trigger gastrointestinal symptoms of discomfort.[29]

57.    As such, the misleading marketing of Defendant's kimchi is particularly concerning for consumers who buy Defendant's "Naturally Fermented" Costco Kimchis to help with gut health or bowel issues but, instead, risk worsening their conditions.

58.    By claiming that their Costco Kimchis are naturally fermented, Defendant misleads reasonable consumers into paying a price premium for a product that they believe may help with gut health or maintaining a healthy diet, not cause gastrointestinal issues or other health concerns.

59.    In reality, buyers are consuming an artificial, processed food that may undermine their health goals by causing cognitive decline or triggering various sugar-

---

[25] https://www.health.harvard.edu/blog/how-healthy-is-sugar-alcohol-202312183002

[26] *Id.*

[27] https://www.news-medical.net/health/Sorbitol-Research-and-Safety.aspx

[28] https://pmc.ncbi.nlm.nih.gov/articles/PMC9180131/

[29] https://onlinelibrary.wiley.com/doi/10.1111/jhn.12144

1    alcohol intolerances or problems.

2    **CLASS ALLEGATIONS**

3        60.    Plaintiff Tran and Plaintiff Wu bring this action pursuant to Fed. R.

4    Civ. P. 23(a), (b)(2), and (b)(3), on behalf of themselves and the following proposed

5    "Nationwide Class":

6            All persons in the United States who purchased Costco
       Kimchis within the relevant limitations period, and/or such
7            subclasses as the Court may deem appropriate.

8        61.    Plaintiff Tran also brings this action on behalf of herself and on behalf

9    of the following proposed "California Class":

10           All persons in California who purchased Costco Kimchis
       within the relevant limitations period, and/or such subclasses
11           as the Court may deem appropriate.

12       62.    Plaintiff Wu brings this action on behalf of herself and on behalf of

13   the following proposed "New York Class":

14           All individuals in New York who purchased Costco Kimchis
       within the relevant limitations period, and/or such subclasses
15           as the Court may deem appropriate.

16       63.    Excluded from the proposed Classes are Defendant and its employees,

17   officers, directors, legal representatives, heirs, successors, subsidiaries, and affiliates, and

18   the judicial officers and their immediate family members and associated court staff

19   assigned to this case, as well as all persons who make a timely election to be excluded

20   from the proposed class.

21       64.    Certification of Plaintiffs' claims for class-wide treatment is

22   appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis

23   using the same evidence they would use to prove those elements in individual actions

24   alleging the same claims.

25       65.    This action meets all applicable standards of Fed. R. Civ. P. 23 for

26   class certification, in that Plaintiffs can demonstrate the elements delineated below.

27       66.    <u>Numerosity</u>. The members of the proposed Classes are so numerous

28   and geographically dispersed that individual joinder of all proposed class members is

impracticable. *See* Fed. R. Civ. P. 23(a)(1). While Plaintiffs believe that there are hundreds of thousands of members of the proposed Classes, the precise number of class members is unknown, but may be ascertained from Defendant's books and records.

67. <u>Ascertainability</u>. The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within its control or Plaintiffs and the class members themselves. Plaintiffs anticipate providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

68. <u>Commonality and Predominance.</u> This action involves common questions of law and fact, which predominate over any questions affecting individual class members. *See* Fed. R. Civ. P. 23(a)(2) and (b)(3). These include, without limitation:

A. Whether Defendant engaged in the conduct alleged in this Complaint;

B. Whether Defendant violated the applicable statutes alleged herein;

C. Whether Defendant's conduct emanated from the State of California;

D. Whether Plaintiffs and the class members are injured and harmed directly by Defendant's conduct;

E. Whether Plaintiffs and the class members are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts; and

F. Whether Plaintiffs and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint.

69. <u>Typicality</u>. Plaintiffs' claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured by Defendant's wrongful conduct as described above. *See* Fed. R. Civ. P. 23(a)(3). Defendant's creation and display of its misleading advertisements is uniform for all Plaintiffs and class members.

70. <u>Adequacy</u>. Plaintiffs are adequate proposed class representatives

because their interests do not conflict with the interests of the other members of the proposed Classes they seek to represent; because they have retained counsel competent and experienced in complex class action litigation; and because they intend to prosecute this action vigorously. The interests of the proposed Classes will be fairly and adequately protected by Plaintiffs and their counsel. *See* Fed. R. Civ. P. 23(a)(4).

71.   <u>Declaratory and Injunctive Relief</u>. Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the proposed Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed Classes as a whole. *See* Fed. R. Civ. P. 23(b)(2).

72.   <u>Superiority</u>. A class is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the proposed Classes to individually seek redress for Defendant's wrongful conduct.

73.   Applying the principles of equity or balance of equities, expecting an individual Plaintiff who is at a disadvantage with limited resources and spending capacity, and with minimal negotiating power, if any, to litigate claims against Defendant, a corporation that has significant resources and deep pockets, would be unfair. Class actions are a necessary and essential means to provide for public interest litigation with checks and balances to curtail deceptive practices by more powerful private corporations, including Defendant.

74.   There is no special interest in class members individually controlling the prosecution of separate actions. And even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all

1   parties and the court system. By contrast, the class action device presents far fewer

2   management difficulties and provides the benefits of single adjudication, economy of

3   scale, and comprehensive supervision by a single court. *See* Fed. R. Civ. P. 23(b)(3).

4   **CALIFORNIA LAW APPLIES TO THE ENTIRE NATIONWIDE CLASS**

5       75.   California's substantive laws apply to every class member, regardless

6   of where in the United States the class member resides.

7       76.   California's substantive laws may be constitutionally applied to the

8   claims of Plaintiffs and the Classes under the Due Process Clause, 14th Amend. §1, and

9   the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution. California has

10   significant contacts, or a significant aggregation of contacts, to the claims asserted by

11   Plaintiffs and all class members, thereby creating state interests that ensure that the choice

12   of California state law is not arbitrary or unfair.

13       77.   On information and belief, Defendant also owns property and

14   conducts substantial business in California. Defendant's United States headquarters and

15   principal place of business are located in California, and Defendant's sole factory in the

16   United States is located in California. Additionally, many of Defendant's high-level

17   employees are based in California, such as the Head of Marketing, Head of Sales

18   Management, Director of Quality Assurance, and others. Therefore, California has an

19   interest in regulating Defendant's conduct under its laws. Defendant's decision to reside

20   in California and avail itself of California's laws, and to engage in the challenged conduct

21   from and emanating out of California, renders the application of California law to the

22   claims herein appropriate and constitutionally permissible.

23       78.   Upon information and belief, California is also the state from which

24   Defendant's alleged misconduct and false statements emanated. This conduct similarly

25   injured and affected Plaintiffs and all other class members.

26       79.   The application of California laws to the Classes is also appropriate

27   under California's choice of law rules because California has significant contacts with

28   Plaintiffs, and the claims of Plaintiffs and the proposed Classes. California also has a

greater interest in applying its laws here than any other interested state.

**FIRST CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law ("UCL")**

**Cal. Business & Professional Code § 17200 et seq.**

**(On behalf of Plaintiff Tran, the Nationwide Class, and the California Class)**

80.    Plaintiff Tran incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

81.    California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

82.    Defendant's false and misleading advertising claims regarding the Costco Kimchis violate all three prongs—unlawful, unfair, and fraudulent—of the UCL.

83.    First, Defendant's representations and omissions regarding the Costco Kimchis as "Naturally Fermented" are unlawful because they are misleading to a reasonable consumer and violate the CLRA, FAL, and NY GBL, as alleged herein.

84.    Second, Defendant's conduct violates the "unfair" prong of the UCL because Defendant's representations and omissions regarding the Costco Kimchis are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact on consumers outweighs any reasons, justifications, or motives for Defendant's conduct.

85.    Third, Defendant's conduct violates the "fraudulent" prong of the UCL because Defendant's representations and omissions are likely to deceive members of the public.

86.    Plaintiff Tran reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the inclusion of processed additives an important factor in deciding whether to purchase the products. The representations and omissions were a

substantial factor in Plaintiff Tran's decision to purchase the products.

87.    As a direct and proximate result of Defendant's violations of the UCL, Plaintiff Tran, the Nationwide Class, and the California Class have suffered injury in fact and have lost money. Plaintiff Tran, the Nationwide Class, and the California Class paid an unwarranted premium for the Costco Kimchis that Defendant claimed were "Naturally Fermented." In reality, the Costco Kimchis contain sorbitol, a synthetic, processed, non-natural ingredient.

88.    Absent Defendant's misrepresentations and omissions, Plaintiff Tran would not have purchased the Costco Kimchis or would have paid substantially less for them.

89.    Plaintiff Tran seeks relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff Tran and the Nationwide and California Classes. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff Tran would have to show that the products have no market value, whereas that showing is not required for restitution.

90.    Plaintiff Tran also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Costco Kimchis. Injunctive relief is appropriate because Defendant continues to deceptively market the Costco Kimchis as "Naturally Fermented." Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff Tran and the Nationwide and California classes which cannot be achieved through available legal remedies.

91.    **Permanent public injunctive relief.** Plaintiff Tran also seeks public injunctive relief to protect the general public from Defendant's conduct.

92.    Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

## SECOND CLAIM FOR RELIEF

### Violation of California's False Advertising Law ("FAL")

### Cal. Business & Professional Code § 17500 *et seq.*

### (On behalf of Plaintiff Tran, the Nationwide Class, and the California Class)

93.  Plaintiff Tran incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

94.  The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

95.  The FAL prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

96.  Defendant violated section 17500 when it advertised and marketed the Costco Kimchis through the unfair, deceptive, and misleading representations and omissions disseminated to the public that both are "Naturally Fermented." In reality, the Costco Kimchis contain sorbitol, a synthetic, processed, non-natural ingredient.

97.  Plaintiff Tran reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the inclusion of processed additives an important factor in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiff Tran's decision to purchase the products.

98.  As a direct and proximate result of Defendant's violations of the FAL, Plaintiff Tran, the Nationwide Class, and the California Class have suffered injury in fact and have lost money. Plaintiff Tran and the Nationwide and California classes paid an unwarranted premium for the Costco Kimchis that Defendant claimed were "Naturally Fermented" but that actually included the processed food additive sorbitol.

99.  Absent Defendant's misrepresentations and omissions, Plaintiff Tran would not have purchased the Costco Kimchis or would have paid substantially less for them.

100.   Plaintiff Tran seeks relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff Tran, the Nationwide Class, and the California Class. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff Tran would have to show that the products have no market value, whereas that showing is not required for restitution.

101.   Plaintiff Tran also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Costco Kimchis. Injunctive relief is appropriate because Defendant continues to deceptively market the Costco Kimchis as "Naturally Fermented." Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff Tran, the Nationwide Class, and the California Class which cannot be achieved through available legal remedies.

102.   **Permanent public injunctive relief.** Plaintiff Tran also seeks public injunctive relief to protect the general public from Defendant's conduct.

103.   Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff Tran seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

### THIRD CLAIM FOR RELIEF

**Violation of the California Consumers Legal Remedies Act ("CLRA") Cal. Civ. Code. § 1750 *et seq.***

**(On behalf of Plaintiff Tran, the Nationwide Class, and the California Class)**

104.   Plaintiff Tran incorporates by reference all allegations in this Complaint and restates them as if fully set forth here.

105.   Plaintiff Tran and the other class members are consumers within the meaning of Cal. Civ. Code § 1761(d) and have engaged in a transaction within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

106.   Defendant is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and sells "goods" within the meaning of Cal. Civ. Code §§ 1761(a) and 1770.

107.   Defendant's Costco Kimchis are "goods" within the meaning of Cal. Civ. Code. §§ 1761(a) and (b).

108.   Defendant has violated § 1770(a)(5) by representing that the Costco Kimchis had characteristics they did not have.

109.   Defendant has violated § 1770(a)(7) by misrepresenting that the Costco Kimchis is of a particular standard, quality, or grade.

110.   Defendant has violated § 1770(a)(9) by advertising the Costco Kimchis with an intent not to sell them as advertised.

111.   Defendant's acts, practices, and omissions, set forth above, led consumers to falsely believe that the Costco Kimchis are vegetables that are naturally fermented and do not include processed additives that are incompatible with many diets and dietary preferences. In reality, the Costco Kimchis contain sorbitol, a synthetic, processed, non-natural ingredient.

112.   Plaintiff Tran reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the inclusion of processed additives an important factor in deciding whether to purchase the product. The representations and omissions were a substantial factor in Plaintiff Tran's decision to purchase the product.

113.   Defendant's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiff Tran, the Nationwide Class, and the California Class. Absent Defendant's misrepresentations and omissions, Plaintiff Tran would not have purchased the Costco Kimchis or would have paid substantially less for them.

114.   Plaintiff Tran seeks relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiffs, the Nationwide Class, and the California Class. Restitution is appropriate

because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff Tran would have to show that the products have no market value, whereas that showing is not required for restitution. Plaintiff Tran reserves the right to amend the Complaint to seek damages under the CLRA.

115. Plaintiff Tran also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Costco Kimchis. Injunctive relief is appropriate because Defendant continues to deceptively market the Costco Kimchis as "Naturally Fermented." Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff Tran and the Nationwide and California classes which cannot be achieved through available legal remedies.

116. **Permanent public injunctive relief.** Plaintiff Tran also seeks public injunctive relief to protect the general public from Defendant's conduct.

117. Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff Tran seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

### FOURTH CLAIM FOR RELIEF

### Violation of the New York General Business Law § 349

### (By Plaintiff Wu, individually and on behalf of the New York Class)

118. Plaintiff Wu incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

119. In addition to claims under California law, Plaintiff Wu and the New York Class bring substantive claims under New York law.

120. NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

121. NY GBL § 349 applies to Plaintiff Wu and the New York Class

because the State of New York has a strong interest in protecting its residents from false advertising and deceptive business practices by companies marketing consumer goods within the state.

122.    Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Defendant willfully or knowingly violated this section. The court may award reasonable attorneys' fees to a prevailing plaintiff.

123.    The practices employed by Defendant, by which it advertises and promotes the Costco Kimchis, are materially misleading and deceptive within the meaning of NY GBL § 349. Defendant markets Costo Kimchis as being "Naturally Fermented," indicating that they do not contain any processed food additives.

124.    Defendant's acts and practices deceived Plaintiff Wu and the New York Class. Plaintiff and the New York Class reasonably relied on these representations and believed they were purchasing a product that was naturally fermented and, thus, did not include processed food additives. In truth, the Costco Kimchis contain a processed food additive.

125.    Plaintiff Wu and the New York Class were intentionally misled by Defendant's product packaging. They paid a price premium for products falsely marketed as being "Naturally Fermented." In reality, the Costco Kimchis contain sorbitol, a synthetic, processed, non-natural ingredient.

126.    Defendant disseminated these false and misleading statements throughout New York, which were known, or should have been known through reasonable care, to be untrue and misleading to consumers, including Plaintiff Wu and the New York Class.

127.    Plaintiff Wu and the New York Class have been injured by

Defendant's deceptive acts or practice, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the false advertising.

128.   Accordingly, pursuant to NY GBL § 349(h), Plaintiff Wu and the New York Class seek actual damages or $50, whichever is greater, treble damages, and attorneys' fees.

129.   Plaintiff Wu and the New York Class have no adequate remedy at law.

130.   Defendant's conduct has caused and continues to cause immediate and irreparable injury to Plaintiff Wu and the New York Class and will continue to mislead consumers unless enjoined by this Court.

131.   Plaintiff Wu seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Costco Kimchis. Injunctive relief is appropriate because Defendant continues to deceptively market the Costco Kimchis as "Naturally Fermented." Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff Wu and the New York Class which cannot be achieved through available legal remedies.

## FIFTH CLAIM FOR RELIEF

### Violation of the New York General Business Law § 350

### (By Plaintiff Wu, individually and on behalf of the New York Class)

132.   Plaintiff Wu incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

133.   In addition to claims under California law, Plaintiff Wu and the New York Class bring substantive claims under New York law.

134.   By reason of the acts set forth above, Defendant has been and is engaged in consumer-oriented advertising and marketing against Plaintiff Wu and class members located in New York, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any

service in this state is hereby declared unlawful."

135.  Defendant caused statements that were untrue or misleading, and which they knew to be untrue or misleading, to be disseminated throughout New York State and elsewhere, through advertising, marketing, and other publications.

136.  Defendant's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Defendant's material misrepresentations.

137.  Plaintiff Wu and the New York Class have been injured by Defendant's deceptive acts or practices.

138.  Plaintiff Wu and the New York Class have no adequate remedy at law.

139.  Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff Wu and the New York Class and will continue to damage both Plaintiff Wu and the New York Class and deceive the public unless enjoined by this Court.

140.  Pursuant to NY GBL § 350-e, Plaintiff Wu and the New York Class seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350-a(1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

141.  Defendant's conduct has also substantially injured the public, as consumers across New York were exposed to and relied upon Defendant's false advertising in deciding to purchase the Costco Kimchis. By marketing both Costco Kimchis as "Naturally Fermented," Defendant knowingly misled reasonable consumers into paying a premium for products that contain sorbitol, a synthetic, processed, non-natural ingredient.

142.  The widespread deception not only caused financial harm to consumers but also promoted misleading narratives about a traditional Korean food with

1  deep ties to the history and culture of the country.

2      143.   Defendant's conduct thus caused real-world harm and poses an

3  ongoing risk of further injury if not enjoined.

4      144.   Plaintiff Wu seeks injunctive relief in the form of an order enjoining

5  Defendant from continuing to deceptively market the Costco Kimchis. Injunctive relief

6  is appropriate because Defendant continues to deceptively market the Costco Kimchis as

7  "Naturally Fermented." Injunctive relief is necessary to prevent Defendant from

8  continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff Wu

9  and New York Class which cannot be achieved through available legal remedies.

10                          **PRAYER FOR RELIEF**

11      **WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes,

12  pray for relief and judgment against Defendant as follows:

13  A.   Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil

14       Procedure, appointing Plaintiffs as representative of the Classes, and

15       designating Plaintiffs' counsel as class counsel;

16  B.   Awarding Plaintiffs and the class members compensatory damages and

17       actual damages in an amount exceeding $5,000,000, to be determined by

18       proof;

19  C.   Awarding Plaintiffs and the class members appropriate relief, including

20       actual and statutory damages;

21  D.   For declaratory and equitable relief, including restitution and disgorgement;

22  E.   For an order enjoining Defendant from continuing to engage in the wrongful

23       acts and practices alleged here;

24  F.   Awarding Plaintiffs and the class members the costs of prosecuting this

25       action, including expert witness fees;

26  G.   Awarding Plaintiffs and the class members reasonable attorneys' fees and

27       costs as allowable by law;

28  H.   Awarding pre-judgment and post-judgment interest; and

I.      Granting any other relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

ZIMMERMAN REED LLP

Dated: September 15, 2025          By:      /s/ Ryan J. Ellersick
                                                 Caleb Marker
                                                 Ryan J. Ellersick
                                                 6420 Wilshire Blvd., Suite 1080
                                                 Los Angeles, CA 90048
                                                 (877) 500-8780
                                                 caleb.marker@zimmreed.com
                                                 ryan.ellersick@zimmreed.com

JANOVE PLLC

Raphael Janove
500 7th Ave., 8th Fl.
New York, NY 10018
(646) 347-3940
raphael@janove.law

*Attorneys for Plaintiffs and
the Proposed Classes*

CLASS ACTION COMPLAINT

# EXHIBIT A

I, Kim Tran, declare:

1.  I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.  I submit this Declaration pursuant to California Code of Civil Procedure section 2015.5 and California Civil Code section 1780(d).

3.  I reside in Torrance, California. As set forth in my complaint, I purchased Defendant Daesang America Inc.'s Sliced Nappa Cabbage Mat Kimchi and Cucumber Kimchi from Costco.

4.  Because I reside in Torrance, California, the Central District of California is the proper place for the trial of this action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

09/13/25
_____
Date

Kim Tran (Sep 13, 2025 05:11:13 PDT)
_____
Kim Tran